**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

| | |
|---|---|
| **HANA ROSENBAUM** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>**RETINA GROUP OF FLORIDA,**<br><br>*Defendant*. | **Case No.: ____________**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Hana Rosenbaum ("Plaintiff"), individually and on behalf of a class of similarly situated persons, brings this Class Action Complaint and alleges the following against Defendant Retina Group of Florida (or "Defendant"), based upon personal knowledge with respect to Plaintiffs and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## INTRODUCTION

1. Plaintiffs bring this class action against Retina Group of Florida for its failure to properly secure Plaintiffs' and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). According to the notice provided, the PII and PHI may have included patients' names, addresses, phone numbers, dates of birth, Social Security numbers, health insurance

information, medical record numbers, patient account numbers, dates of service and/or treatment information.

2. Retina Group of Florida, failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiffs seek, among other things, orders requiring Retina Group of Florida to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3. On November 9, 2024, Retina Group of Florida, "identified unusual activity in our network and immediately began an investigation. The investigation determined there was unauthorized access to a portion of our network between November 6, 2024, and November 9, 2024, and that certain information may have been taken."

4. It was only after that disclosure that Retina Group of Florida confirmed the data breach, adding that the PII and/or PHI of nearly 153,000 patients had been put at risk.

5. Retina Group of Florida could have prevented the recent Data Breach had it implemented and maintained adequate data security measures and protocols in order to secure and protect its patients' data in the wake of that incident.

6. Plaintiffs and Class Members would not have provided their PII and PHI to Retina Group of Florida if they had known that Retina Group of Florida would breach its promises and agreements by failing to ensure that it used adequate security measures.

7. Plaintiffs seek to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were stolen in the Data Breach. Plaintiffs seek remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to Retina Group of Florida's data security policies and practices.

## PARTIES

8. Plaintiff Hana Rosenbaum is a Florida resident who has been a patient at Retina Group of Florida facilities in recent years. She gave PII and PHI to Retina Group of Florida as a condition of receiving medical services.

9. Defendant, Retina Group of Florida is a Florida corporation, with its principal place of business in Ft. Lauderdale, Florida.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action under 28 § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

10. This Court has personal jurisdiction over Defendant because its principal place of business is in this District and acts and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District. Defendant has sufficient contacts in Florida, as it conducts a significant amount of its business in the state of Florida.

11. Venue is proper in Broward County under 18 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this District.

## FACTUAL ALLEGATIONS

### The Data Breach

12. Retina Group of Florida acquires and electronically stores patient PII and PHI. As a healthcare provider, Retina Group of Florida is required to ensure that PII and PHI are not disclosed or disseminated to unauthorized third parties without its patients' express written consent.

13. On September 3, 2025, Retina Group of Florida disclosed that 152,691 patients were in fact affected[1].

14. Retina Group of Florida's disclosures are otherwise deficient. They do not include basic details concerning the Data Breach, including, but not limited to,

---

[1] U.S. Dep't of Health & Human Servs., Office for Civil Rights, *Breach Portal: Notice to the Secretary of HHS Breach of Unsecured Protected Health Information* ("Wall of Shame"), Retina Group of Florida, reported Sept. 3, 2025, available at https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf

why PII and PHI were stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and what Retina Group of Florida knows about the degree to which the data has been disseminated.

15. Retina Group of Florida has not nearly disclosed all the details of the Data Breach and its investigation. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Retina Group of Florida has taken to secure the PII and PHI still in its possession. Plaintiffs seek to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiffs' and Class Members' interests, and ensure that Retina Group of Florida has proper measures in place to prevent similar incidents from occurring in the future.

**Retina Group of Florida's Privacy Policies**

16. The Health Insurance Portability and Accountability Act ('HIPAA') requires that Retina Group of Florida maintain strict privacy practices. Retina Group of Florida's "Privacy Policy" claims "We don't share any personally identifying information publicly or with third-parties, except when required to by law or by way of your authorization."[2]

---

[2] Privacy Policy, available at https://www.retinagroupflorida.com/privacy-policy (last visited September 19, 2025).

## The Healthcare Sector is a Primary Target for Data Breaches

17. Retina Group of Florida was on notice that companies in the healthcare industry are susceptible targets for data breaches.

18. Retina Group of Florida was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically noted that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[3]

---

[3] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf) (last accessed Mar. 14, 2023).

19. The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[4], to 1,638 in 2021.[5] As a recent report reflects, "[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful ransomware campaigns."[6]

20. At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[7] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[8] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went

[4] *See* Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/business/resources/reports/2021-data-breach-investigations-report.pdf (last accessed Mar. 14, 2023).

[5] *See* Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last accessed Mar. 14, 2023).

[6] *Id.* at 62.

[7] *2018 End-of-Year Data Breach Report*, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last accessed Mar. 14, 2023).

[8] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last accessed Mar. 14, 2023).

up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.[9]

21. Healthcare-related breaches have persisted because criminals see electronic patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported having a significant security incident in the previous 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[10] "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[11]

22. The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

---

[9] *Id.*

[10] *2019 HIMSS Cybersecurity Survey* (available at https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf) (last accessed Mar. 14, 2023).

[11] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks) (last accessed Mar. 14, 2023).

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[12]

23. As a major healthcare provider, Retina Group of Florida knew, or should have known, the importance of safeguarding the patients' PII and PHI entrusted to it and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Retina Group of Florida patients because of a breach. Retina Group of Florida failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**Retina Group of Florida Stores Plaintiffs' and Class Members' PII and PHI**

24. Retina Group of Florida obtains and stores a massive amount of its patients' PII and PHI. As a condition of engaging in health services, Retina Group of Florida requires that patients entrust it with highly confidential PII and PHI.

25. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII and PHI, Retina Group of Florida assumed legal and

[12] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited Mar. 14, 2023).

equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII and PHI from disclosure.

26. Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and, as Retina Group of Florida's current and former patients, they rely on Retina Group of Florida to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

27. Retina Group of Florida was aware that the PII and PHI it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

28. PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[13] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[14]

---

[13] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Mar. 14, 2023).

[14] Center for Internet Security, *Data Breaches: In the Healthcare Sector* (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last accessed Mar. 14, 2023).

29. PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

30. Medical identify theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[15]

31. The ramifications of Retina Group of Florida's failure to keep its patients' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

[15] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last accessed Mar. 14, 2023).

32. Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

33. Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened. [16] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[17]

34. Retina Group of Florida knew, or should have known, the importance of safeguarding its patients' PII and PHI entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Retina Group of Florida patients because of a breach. Retina Group of Florida failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[16] *See* Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last accessed Mar. 14, 2023).

[17] Experian, The Potential Damages and Consequences of Medical Identityy Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last accessed Mar. 14, 2023).

## The Data Breach Exposed Plaintiffs and Class Members to Identity Theft and Out-of-Pocket Losses

35. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

36. Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, Retina Group of Florida policies and practices with respect to maintaining the security of its patients' PII and PHI were reckless, or at the very least, negligent.

37. In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiffs and Class Members should be compensated for the time they have expended because of Retina Group of Florida misfeasance.

38. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[18]

[18] 2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last accessed Mar. 14, 2023).

39. As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiffs and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a. losing the inherent value of their PII and PHI;

b. identity theft and fraud resulting from the theft of their PII and PHI;

c. costs associated with the detection and prevention of identity theft;

d. costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

e. lowered credit scores resulting from credit inquiries following fraudulent activities;

f. costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

g. the continued imminent injury flowing from potential fraud and identify theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

**Retina Group of Florida's Lax Security Violates HIPAA**

40. Retina Group of Florida had a non-delegable duty to ensure that all PHI it collected and stored was secure.

41. Retina Group of Florida is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

42. These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

43. HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

44. HIPAA requires that Retina Group of Florida implement appropriate safeguards for this information.

45. Despite these requirements, Retina Group of Florida failed to comply with its duties under HIPAA and its own Privacy Practices. In particular, Retina Group of Florida failed to:

a. maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. adequately protect Plaintiffs' and Class Members' PHI;

c. ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d. implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e. implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f. implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and

security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g. protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h. ensure compliance with the electronic PHI security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i. train all members of its workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

46. Retina Group of Florida failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiffs' and Class Members' PHI.

**Retina Group of Florida Violated FTC Guidelines**

47. The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Retina Group of Florida from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data

security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

48. The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[19]

49. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[20] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

50. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods

---

[19] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Mar. 14, 2023).

[20] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Mar. 14, 2023).

for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[21]

51. The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

52. Retina Group of Florida failed to properly implement basic data security practices. Retina Group of Florida failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

53. Retina Group of Florida was at all times fully aware of its obligation to protect its patients' PII and PHI because of its position as a healthcare provider. Retina Group of Florida was also aware of the significant repercussions that would result from its failure to do so.

---

[21] FTC, *Start With Security*, *supra*.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this class action on behalf of themselves and on behalf of all others similarly situated pursuant to Florida Rule of Civil Procedure 1.220.[22] Plaintiffs seek certification of a Class (the "Class") as defined below:

> All Florida citizens whose PII and/or PHI was compromised in the data breach disclosed by Retina Group of Florida on September 3, 2025.

55. Excluded from the Class are Retina Group of Florida, any entity in which Retina Group of Florida has a controlling interest, and Retina Group of Florida officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

56. Plaintiffs reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiffs.

57. **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. Retina Group of Florida has disclosed that the Data Breach affected approximately 153,000 patients. All Class Members' names and addresses are available from Retina Group of Florida

[22] Plaintiffs are aware that this action will be governed by Rule 23 of the Federal Rules of Civil Procedure so long as it remains in this Court. However, Plaintiffs maintain the right to seek remand of this action to the state court from which it was removed, and in an abundance of action, will not concede that Rule 23 properly applies.

records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

58. **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether and to what extent Retina Group of Florida had a duty to protect the PII and PHI of Class Members;

b. Whether Retina Group of Florida was negligent in collecting and storing Plaintiffs' and Class Members' PII and PHI;

c. Whether Retina Group of Florida had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d. Whether Retina Group of Florida took reasonable steps and measures to safeguard Plaintiffs' and Class Members' PII and PHI;

e. Whether Retina Group of Florida failed to adequately safeguard the PII and PHI of Class Members;

f. Whether Retina Group of Florida failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g. Whether Retina Group of Florida adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII and PHI had been compromised;

h. Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Retina Group of Florida's wrongful conduct;

i. Whether Plaintiffs and Class Members are entitled to restitution because of Retina Group of Florida wrongful conduct;

j. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k. Whether Plaintiffs and Class Members are entitled to identity theft protection for their respective lifetimes.

59. **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII and PHI, like that of every other Class Member, was disclosed by Retina Group of Florida. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Retina Group of Florida's common misconduct. Plaintiffs are advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiffs' claims

and Class Members' claims arise from the same operative facts and are based on the same legal theories.

60. **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Retina Group of Florida to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

61. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Retina Group of Florida has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Retina Group of Florida policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Retina Group of Florida's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

62. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to

all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Retina Group of Florida. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

63. The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Retina Group of Florida would necessarily gain an unconscionable advantage in non-class litigation, since Retina Group of Florida would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by Class Members and will establish the right of each Class

Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

64. The litigation of Plaintiffs' claims is manageable. Retina Group of Florida's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

65. Adequate notice can be given to Class Members directly using information maintained in Retina Group of Florida records.

66. Unless a class-wide injunction is issued, Retina Group of Florida may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Retina Group of Florida may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Retina Group of Florida may continue to act unlawfully as set forth in this Complaint.

67. Retina Group of Florida has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Fla. R. Civ. P. 1.220.

**COUNT I**
**NEGLIGENCE**
**(on behalf of Plaintiffs and the Class)**

68. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in paragraphs 1-67

69. Retina Group of Florida knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Retina Group of Florida's security protocols to ensure that Plaintiffs' and Class Members' Private Information in Defendant's possession was adequately secured and protected, that Plaintiffs' and Class Members' Private Information on Retina Group of Florida's networks were not accessible to criminals without authorization, and that Retina Group of Florida's employees tasked with maintaining such information were adequately trained on security measures regarding the security of customers/patients' PII and PHI.

70. As a condition of utilizing Retina Group of Florida's services, Plaintiffs and Class Members were obligated to provide their PII and PHI to Retina Group of Florida.

71. Plaintiffs and Class Members entrusted their PII and PHI to Retina Group of Florida with the understanding that Retina Group of Florida would safeguard their information, use their PII and PHI for business purposes only, and not disclose their PII and PHI to unauthorized third parties.

72. Retina Group of Florida knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiffs' and Class Members' PII and PHI involved an unreasonable risk of harm to Plaintiffs and Class Members.

73. Retina Group of Florida also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class Members' PII and PHI.

74. A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of prior data breaches and disclosures prevalent in today's digital landscape, including the explosion of data breaches involving similarly situated healthcare providers.

75. Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Retina Group of Florida knew or should have known of the inherent risks in collecting and storing Plaintiffs' and Class Members' PII and PHI, the critical importance of providing

adequate security of that information, the necessity for encrypting PHI stored on Retina Group of Florida systems, and that it had inadequate IT security protocols in place to secure Plaintiffs' and Class Members' PII and PHI.

76. Retina Group of Florida own conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Retina Group of Florida's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

77. Plaintiffs and Class Members had no ability to protect their PII and PHI that was in Retina Group of Florida's possession.

78. Retina Group of Florida was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

79. Retina Group of Florida had, and continues to have, a duty to timely disclose that Plaintiffs' and Class Members' PII and PHI within its possession was compromised and precisely the type(s) of information that were compromised.

80. Retina Group of Florida had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' Private Information.

81. Retina Group of Florida systematically failed to provide adequate security for data in its possession.

82. Retina Group of Florida, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII and PHI within its possession.

83. Retina Group of Florida, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII and PHI.

84. Retina Group of Florida, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII and PHI within Retina Group of Florida's possession might have been compromised and precisely the type of information compromised.

85. Retina Group of Florida's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII and PHI to be compromised.

86. But for all of Retina Group of Florida's acts of negligence detailed above, including allowing cyber criminals to access its systems containing Plaintiffs' and Class Members' PII and PHI would not have been compromised.

87. Plaintiffs never transmitted their own unencrypted PHI over the internet or any other unsecured source.

88. Following the Data Breach, Plaintiffs' PHI has been seized by unauthorized third parties who are now free to exploit and misuse that PHI without any ability for Plaintiffs to recapture and erase that PHI from further dissemination—Plaintiffs' PHI is forever compromised.

89. But for the Data Breach, Plaintiffs would not have incurred the loss and publication of their PHI and other injuries.

90. There is a close causal connection between Retina Group of Florida's failure to implement security measures to protect Plaintiffs' and Class Members' PII and PHI and the harm suffered, or risk of imminent harm suffered by Plaintiffs and Class Members. Plaintiffs' and Class Members' PHI was accessed and compromised as the proximate result of Retina Group of Florida's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures and encryption.

91. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, loss of privacy, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

92. As a result of Retina Group of Florida's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their

PII and PHI, which is still in the possession of third parties, will be used for fraudulent purposes.

93. Plaintiffs seek the award of actual damages on behalf of themselves and the Class.

94. Plaintiffs seek injunctive relief on behalf of the Class in the form of an order (1) compelling Retina Group of Florida to institute appropriate data collection and safeguarding methods and policies with regard to patient information; and (2) compelling Retina Group of Florida to provide detailed and specific disclosure of what types of Private Information have been compromised as a result of the data breach.

**COUNT II**
**NEGLIGENCE PER SE**
**(on behalf of Plaintiffs and the Class)**

95. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in paragraphs 1-67

96. Pursuant to the HIPAA (42 U.S.C. § 1302d et seq.), the FTC Act, and Florida law (Fla. Stat. § 456.057 and § 501.171), Retina Group of Florida was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class Members' PHI and PII.

97. Retina Group of Florida breached its duties by failing to employ industry standard data and cybersecurity measures to ensure its compliance with those laws, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

98. It was reasonably foreseeable, particularly given the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiffs' and Class Members' PII and PHI in compliance with applicable laws would result in an unauthorized third-party gaining access to Retina Group of Florida networks, databases, and computers that stored or contained Plaintiffs' and Class Members' PII and PHI.

99. Plaintiffs' and Class Members' PII and PHI constitute personal property that was stolen due to Retina Group of Florida's negligence, resulting in harm, injury and damages to Plaintiffs and Class Members.

100. Retina Group of Florida's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiffs' and Class Members' unencrypted PII and PHI, and Plaintiffs and Class Members have suffered and will continue to suffer damages as a result of Retina Group of Florida's conduct. Plaintiffs and Class Members seek damages and other relief as a result of Retina Group of Florida's negligence.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(on behalf of Plaintiffs and the Class)**

101. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in paragraphs 1-67.

102. When Plaintiffs and Class Members provided their PII and PHI to Retina Group of Florida they entered into implied contracts with Retina Group of Florida, under which Retina Group of Florida agreed to take reasonable steps to protect Plaintiffs' and Class Members' PII and PHI, comply with it statutory and common law duties to protect Plaintiffs' and Class Members' PII and PHI, and to timely notify them in the event of a data breach.

103. Retina Group of Florida solicited and invited Plaintiffs and Class Members to provide their PII and PHI as part of Retina Group of Florida's provision of healthcare services. Plaintiffs and Class Members accepted Retina Group of Florida's offers and provided their PII and PHI to Retina Group of Florida.

104. When entering into implied contracts, Plaintiffs and Class Members reasonably believed and expected that Retina Group of Florida data security practices complied with its statutory and common law duties to adequately protect Plaintiffs' and Class Members' PII and PHI and to timely notify them in the event of a data breach.

105. Plaintiffs and Class Members paid money to Retina Group of Florida receive healthcare services. Plaintiffs and Class Members reasonably believed and expected that Retina Group of Florida would use part of those funds to obtain adequate data security. Retina Group of Florida failed to do so.

106. Plaintiffs and Class Members would not have provided their PII and PHI to Retina Group of Florida had they known that Retina Group of Florida would not safeguard their PII and PHI, as promised, or provide timely notice of a data breach.

107. Plaintiffs and Class Members fully performed their obligations under their implied contracts with Retina Group of Florida.

108. Retina Group of Florida breached its implied contracts with Plaintiffs and Class Members by failing to safeguard Plaintiffs' and Class Members' PII and PHI and by failing to provide them with timely and accurate notice of the Data Breach.

109. The losses and damages Plaintiffs sustained, include, but are not limited to:

a. Theft of their PII and PHI;

b. Costs associated with purchasing credit monitoring and identity theft protection services;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their PII and PHI;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling, and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Retina Group of Florida with the mutual understanding that Retina Group of Florida would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their Private Information, which remains in Retina Group of Florida's possession and is subject to further breaches so long as Retina Group of Florida fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' data; and

i. Emotional distress from the unauthorized disclosure of Private Information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiffs and Class Members.

110. As a direct and proximate result of Retina Group of Florida breach of contract, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**(on behalf of Plaintiffs and the Class)**

111. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in paragraphs 1-67.

112. Retina Group of Florida has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship, as a consequence of the special relationship of trust and confidence that exists

between patients (like Plaintiffs and Class Members) and their medical care providers (like Retina Group of Florida).

113. In light of their special relationship, Retina Group of Florida has become the guardian of Plaintiffs' and Class Members' PII and PHI. Retina Group of Florida has become a fiduciary, created by its undertaking and guardianship of patient PII and PHI, to act primarily for the benefit of its patients, including Plaintiffs and Class Members. This duty included the obligation to safeguard Plaintiffs' and Class Members' PII and PHI and to timely notify them in the event of a data breach.

114. Retina Group of Florida breached its fiduciary duties owed to Plaintiffs and Class Members by failing to:

a. properly encrypt and otherwise protect the integrity of the system containing Plaintiffs' and Class Members' PII and PHI;

b. timely notify and/or warn Plaintiffs and Class Members of the Data Breach;

c. ensure the confidentiality and integrity of electronic protected health information Defendant created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d. implement technical policies and procedures to limit access to only those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

e. implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1);

f. identify and respond to suspected or known security incidents; mitigate to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

g. protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2);

h. protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

i. ensure its compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(94);

j. properly use and disclose PHI that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502, et seq.;

k. effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5);

l. design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 C.F.R. § 164.530(c); and

m. otherwise failing to safeguard Plaintiffs' and Class Members' Personal Information.

115. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiffs and Class Members have suffered and will suffer injury, including, but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Personal Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal Information; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to

prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect patient Personal Information in their continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

116. As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiffs and Class Members have suffered and will continue to suffer injury and/or harm.

## COUNT V
## BREACH OF CONFIDENCE
## (on behalf of Plaintiffs and the Class)

117. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in paragraphs 1-67.

118. Plaintiffs and Class Members have an interest, both equitable and legal, in their Private Information that was conveyed to, collected by, and maintained by Retina Group of Florida and that was accessed or compromised in the Data Breach.

119. Retina Group of Florida was provided with and stored private and valuable PHI related to Plaintiffs and the Class, which it was required to maintain in confidence.

120. Plaintiffs and the Class provided Retina Group of Florida with their personal and confidential PHI under both the express and/or implied agreement of Retina Group of Florida to limit the use and disclosure of such PHI.

121. Retina Group of Florida owed a duty to Plaintiffs and Class Members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PHI in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

122. Retina Group of Florida had an obligation to maintain the confidentiality of Plaintiffs' and Class Members' PHI.

123. Plaintiffs and Class Members have a privacy interest in their personal medical matters, and Retina Group of Florida had a duty not to disclose confidential medical information and records concerning its patients.

124. As a result of the parties' relationship, Retina Group of Florida had possession and knowledge of confidential PHI and confidential medical records of Plaintiffs and Class Members.

125. Plaintiffs' and Class Members' PHI is not generally known to the public and is confidential by nature.

126. Plaintiffs and Class Members did not consent to nor authorize Retina Group of Florida to release or disclose their PHI to unknown criminal actors.

127. Retina Group of Florida breached the duties of confidence it owed to Plaintiffs and Class Members when Plaintiffs' and Class Members' PHI was disclosed to unknown criminal hackers.

128. Retina Group of Florida breached its duties of confidence by failing to safeguard Plaintiffs' and Class Members' PHI, including by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its on privacy policies and practices published to its patients; (h) storing PHI and medical records/information in an unencrypted and vulnerable manner, allowing its disclosure to hackers; and

(i) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class Members' PHI and medical records/information to a criminal third party.

129. But for Retina Group of Florida wrongful breach of its duty of confidences owed to Plaintiffs and Class Members, their privacy, confidences, and PHI would not have been compromised.

130. As a direct and proximate result of Retina Group of Florida's breach of Plaintiffs' and Class Members' confidences, Plaintiffs and Class Members have suffered injuries, including:

a. Loss of their privacy and confidentiality in their PHI;

b. Theft of their Private Information;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

d. Costs associated with purchasing credit monitoring and identity theft protection services;

e. Lowered credit scores resulting from credit inquiries following fraudulent activities;

f. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Retina Group of Florida Data Breach – including finding fraudulent charges,

cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

g. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

h. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Retina Group of Florida with the mutual understanding that Retina Group of Florida would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others;

i. Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Retina Group of Florida possession and is subject to further breaches so long as Retina Group of Florida fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' data;

j. Loss of personal time spent carefully reviewing statements from health insurers and providers to check for charges for services not received, as directed to do by Retina Group of Florida; and

j. Mental anguish accompanying the loss of confidences and disclosure of their confidential and private PHI.

131. Additionally, Retina Group of Florida received payments from Plaintiffs and Class Members for services with the understanding that Retina Group of Florida would uphold its responsibilities to maintain the confidences of Plaintiffs' and Class Members' private medical information.

132. Retina Group of Florida breached the confidence of Plaintiffs and Class Members when it made an unauthorized release and disclosure of their confidential medical information and/or PHI and, accordingly, it would be inequitable for Retina Group of Florida to retain the benefit at Plaintiffs' and Class Members' expense.

133. As a direct and proximate result of Retina Group of Florida's breach of its duty of confidences, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

**COUNT VI**
**<u>INJUNCTIVE/DECLARATORY RELIEF</u>**
**(on behalf of Plaintiffs and the Class)**

134. Plaintiffs re-allege and incorporate by reference herein all the allegations contained in paragraphs 1-67

135. Retina Group of Florida owes a duty of care to Plaintiffs and Class Members requiring it to adequately secure PII and PHI.

136. Retina Group of Florida still stores Plaintiffs' and Class Members' PII and PHI.

137. Since the Data Breach, Retina Group of Florida has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

138. Retina Group of Florida has not satisfied its legal duties to Plaintiffs and Class Members.

139. Actual harm has arisen in the wake of the Data Breach regarding Retina Group of Florida's duties of care to provide security measures to Plaintiffs and Class Members. Further, Plaintiffs and Class Members are at risk of additional or further harm due to the exposure of their PII and PHI, and Retina Group of Florida failure to address the security failings that led to that exposure.

140. Plaintiffs, therefore, seek a declaration: (a) that Retina Group of Florida existing security measures do not comply with its duties of care to provide adequate security; and (b) that to comply with its duties of care, Retina Group of

Florida must implement and maintain reasonable security measures, including, but not limited to, the following:

a. ordering that Retina Group of Florida engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Retina Group of Florida systems on a periodic basis, and ordering Retina Group of Florida to promptly correct any problems or issues detected by such third-party security auditors;

b. ordering that Retina Group of Florida engage third-party security auditors and internal personnel to run automated security monitoring;

c. ordering that Retina Group of Florida audit, test, and train its security personnel regarding any new or modified procedures;

d. ordering that Retina Group of Florida segment patient data by, among other things, creating firewalls and access controls so that if one area of Retina Group of Florida's system is compromised, hackers cannot gain access to other portions of Retina Group of Florida systems;

e. ordering that Retina Group of Florida purge, delete, and destroy in a reasonably secure manner patient data not necessary for its provision of services;

f. ordering that Retina Group of Florida conduct regular computer system scanning and security checks;

g. ordering that Retina Group of Florida routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h. ordering Retina Group of Florida to meaningfully educate its current, former, and prospective patients about the threats they face because of the loss of their PHI to third parties, as well as the steps they must take to protect themselves.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiffs and their counsel to represent the Class;

b. for equitable relief enjoining Retina Group of Florida from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

c. for equitable relief compelling Retina Group of Florida to use appropriate cyber security methods and policies with respect to PII and PHI collection, storage, and protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

d. for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e. for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. for prejudgment interest on all amounts awarded; and

g. such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: 09/19/2025

Respectfully submitted,

**THE CONSUMER PROTECTION FIRM, PLLC**

*/s/ William P. Howard*
William "Billy" Peerce Howard
Florida Bar No.: 0103330
401 East Jackson Street, Suite 2340
Truist Place
Tampa, FL 33602
(813) 500-1500
Billy@TheConsumerProtectionFirm.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs and the Proposed Class*